E-filed:  April 23, 2019

Bob L. Olson, Esq. (NV Bar No. 3783)
Justin L. Carley (NV Bar No. 9994)
Charles E. Gianelloni (NV Bar No. 12747)
SNELL & WILMER L.L.P.
3883 Howard Hughes Pkwy., Suite 1100
Las Vegas, NV 89169
Telephone: (702) 784-5252
Facsimile:  (702) 784-5200
Email: bolson@swlaw.com
        jcarley@swlaw.com
        cgianelloni@swlaw.com

*Attorneys for Creditor 4Front Advisors LLC*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>CWNEVADA LLC,<br><br>                 Debtor. | Case No. 19-12300-mkn<br><br>Chapter 11<br><br>**CREDITOR 4FRONT ADVISORS LLC'S MOTION TO DISMISS BANKRUPTCY PETITION OR, ALTERNATIVELY, MOTION FOR RELIEF FROM THE AUTOMATIC STAY TO ALLOW RECEIVERSHIP AND CONTEMPT PROCEEDINGS TO CONTINUE**<br><br>**Hearing Date:  OST Pending**<br><br>**Hearing Time: OST Pending**<br><br>**Hearing Location:**<br>  **United States Bankruptcy Court**<br>  **Foley Federal Building, Courtroom No. 2**<br>  **300 Las Vegas Blvd South, Third Floor**<br>  **Las Vegas, Nevada 89101** |

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
(702) 784-5200

Debtor-petitioner CWNevada LLC ("Debtor") has forfeited the privilege of seeking voluntary protection under federal bankruptcy law because *Debtor's sole business* (while lawful under Nevada state law) *is growing, manufacturing, distributing, and selling a Schedule I controlled substance (marijuana) in violation of the Controlled Substances Act of 1970.* There is no plan this Court could approve, and any bankruptcy trustee appointed by this Court would be forced to act in violation of federal law; thus, Debtor's Petition is futile.

Accordingly, and for the further reasons set forth herein, 4Front Advisors LLC ("4Front")[1] moves to dismiss the Petition under 11 U.S.C. §§ 305(a)(1) and/or 1112(b). Alternatively, 4Front moves the Court to lift the automatic stay to allow 4Front, joined by other creditors, to continue its months-long efforts to collect its judgment through the Nevada court under Nevada law.[2]

## PARTIES, JURISDICTION, AND VENUE

1.      The Debtor is CWNevada LLC, a Nevada limited liability company, whose CEO, primary shareholder, and representative who authorized the Petition in this matter is Brian Padgett ("Padgett"), an eminent domain attorney in Nevada, who formed CWNevada LLC in 2014 to enter Nevada's then-emerging state-legal cannabis industry as a state-licensed marijuana cultivator, processor, wholesaler, and retailer.

2.      On April 16, 2019, Debtor filed a voluntary petition (facially defective for many reasons noted by the Clerk) for relief under chapter 11 of Title 11 of the United States Code.

3.      This Court ostensibly has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. At this stage of the proceedings, 4Front does not concede that a federal bankruptcy court has subject-matter jurisdiction in a Chapter 11 proceeding where the Debtor's core business contravenes federal law. Regardless, the Court has the power to grant the dismissal sought by 4Front because dismissal is the only appropriate action in the absence of jurisdiction.

---

[1] 4Front is a national cannabis industry consultant highly regarded for its consulting work in jurisdictions where the production and sale of cannabis products are legal under state law.

[2] 4Front is a judgment creditor based upon a January 2019 arbitration award, which was subsequently confirmed over Debtor's objection when, on March 14, 2019, final judgment was entered in Case No. A-17-755479-C, Dept. XXXII, Eighth Judicial District Court, Clark County, Nevada (the "Nevada Action").

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
(702)784-5200

4.     To the extent jurisdiction exists, venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.     This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This Chapter 11 case involves reorganizing a Debtor whose sole operations—cultivating, producing, and selling marijuana and marijuana products—are illegal under federal law. *See* CWNevada Investor Update (February 2016) and Marijuana Licenses, attached as **Exhibit 1**; Feb. 15, 2019, Declaration of Brian Padgett, attached as **Exhibit 21**, ¶¶ 8, 13. Debtor operates three retail marijuana dispensaries (under the Canopi brand). Feb. 2, 2019, Declaration of Kris Krane, attached as **Exhibit 2**, ¶¶ 9-10. It also operates several Nevada-licensed, state-legal marijuana cultivation and manufacturing facilities (Nov. 2, 2018, Stipulation of Uncontested Facts, attached as **Exhibit 3**, ¶¶ 10-12) that are illegal under federal law. Debtor is attempting to use federal bankruptcy law as a tool to thwart and delay its creditors' collection efforts while Debtor undoubtedly squirrels away millions of dollars in untraceable cash, prior to the inevitable receiver appointment in the Nevada Action.

Further proving Debtor's core marijuana business, Debtor cannot distance itself from its under-oath representations in the Nevada Action. Specifically, while opposing 4Front's motion for preliminary injunction in the Nevada Action, Debtor boasted that it had more than enough assets (*e.g.*, marijuana inventory) to satisfy Debtor's $5 million judgment debt to 4Front through the sale of marijuana. For example, Debtor's CPA, Anthony Imbimbo, enumerated Debtor's federally illegal assets in detail under oath:

> CWNevada has a cultivation facility that produces approximately [redacted][3] pounds per year on average. This monthly average is [redacted] **pounds of Cannabis per month** for a fair market value of $[redacted]. This is based on an average retail price of $[redacted] (broken down into sales quantities). Based on this assumption the **Annual Cultivation totals** $[redacted].
>
> **Current inventory on hand** [at CWNevada] includes over [redacted] pounds of **Cannabis Flower** broken down into various

---

[3] An unredacted version of this document exists, subject to a protective order in the Nevada Action.

Snell & Wilmer
— L.L.P. —
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
(702)784-5200

1  | sales weights (valued at $[redacted]), **Cannabis Trim** of [redacted]
2  | (valued at $[redacted] per pound for a total of $[redacted]), **Edible**
   | **Products** of [redacted] units (valued at $[redacted]), **Concentrates**
3  | of [redacted] units (valued at $[redacted]), and **Work in Process**
   | **inventory** (valued at $[redacted]).  The fair market value of this
4  | inventory totals $[redacted].

5  Feb. 14, 2019, Declaration of Anthony Imbimbo, attached as **Exhibit 4**, ¶¶ 6-7 (emphasis added).

6        To reorganize under Chapter 11, Debtor would need to generate revenues from federally

7  illegal marijuana sales to continue operations and pay back its creditors.  Thus, no plan of

8  reorganization can be confirmed pursuant to 11 U.S.C. 1129(a)(3) because no plan can be

9  "proposed in good faith and not by any means forbidden by law."  *Id.*  The privilege provided by

10 federal bankruptcy law cannot be applied to reorganize a business whose sole operations violate

11 federal law.  Moreover, the Debtor likely cannot find a bank or other financial institution which it

12 can deposit its cash and cash equivalents with in violation of 11 U.S.C. § 345.  This is especially

13 troubling as it is believed that Debtor's business is primarily a cash business.

14       While bankruptcy could assist 4Front and the other creditors, this dispute is already being

15 aptly managed by Judge Bare in the Nevada Action.  Indeed, the Nevada court has signaled that it

16 may appoint a receiver under Nevada state law, including because of allegations about the Debtor

17 being seriously mismanaged. *See, e.g.*, Apr. 4, 2019, Transcript of Proceedings, attached as

18 **Exhibit 5**, at 7:23-8:1, 18:23-19:6; Apr. 17, 2019, Transcript of Proceedings, attached as **Exhibit**

19 **22**, at 23:9-12 ("I'm going to appoint a temporary receiver, at a minimum.").  Doubtless, Debtor's

20 purpose in filing the Petition on the cusp of the appointment was to thwart the valid state court

21 receivership proceedings so that Mr. Padgett can continue to mismanage Debtor for his own

22 benefit and to the detriment of 4Front and other creditors.[4]  Debtor and its creditors would benefit

23 from the preservation of the value of the business that a Nevada court-ordered receivership would

24 bring.  Accordingly, this Court should abstain by dismissal under 11 U.S.C. Section 305(a) or

25 dismiss under Section 1112(b).

26

27

28

---

[4] Debtor also likely filed this petition to avoid a contempt order.  The petition was filed on the eve of Debtor's return hearing on an Order to Show Cause due to Debtor's failure to comply with Judge Bare's April 4, 2019 Order.  *See* April 12, 2019 Order, attached as **Exhibit 6**.

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
(702)784-5200

Respectfully, this honorable Court is not empowered to oversee a business being operated contrary to federal law even though its operations may be legal under state law. Nor can it appoint a trustee to manage a federally illegal business. If this Court were to do so, its involvement creates a non-trivial risk that Debtor's state-legal assets could be seized and destroyed, to the detriment of all parties. Thus, Debtor and its relationship with its creditors will be better managed by the Nevada court under Nevada law. The Petition should be dismissed, or, at a minimum, the automatic stay should be lifted so the Nevada court can proceed in protecting the interests of all parties involved.

## II. FACTUAL BACKGROUND

A.    **4Front's Consulting Contract and Arbitration Award.**

Shortly after Debtor's formation in 2014, Debtor entered a consulting agreement with 4Front, whereby 4Front agreed to provide consulting services to assist Debtor in applying for highly valuable and competitive licenses to operate state-legal marijuana facilities in Nevada. Krane Decl. ¶¶ 6, 13. 4Front, a nationally-recognized industry consultant, successfully delivered its services. *Id.* ¶ 5, 14. But Debtor refused to pay. *Id.* ¶ 14.

While 4Front thought it was negotiating a compromise of its consulting fees, on May 15, 2017, Debtor attempted to circumvent a contractual arbitration provision and venue clause by filing litigation in Nevada state court. April 23, 2019 Declaration of Cory Braddock, attached as **Exhibit 7**, ¶ 3. On May 19, 2017, 4Front filed its Statement of Claim before the American Arbitration Association. Krane Decl. ¶ 15. On August 18, 2017, the Nevada court (1) granted 4Front's Motion to Compel Arbitration, and (2) stayed the state court litigation pending the outcome of the arbitration proceeding. Braddock Decl. ¶ 4.

After five days of evidence at arbitration, the panel of three duly-appointed AAA commercial arbitrators found entirely in 4Front's favor. Jan. 9, 2019, AAA Final Award, attached as **Exhibit 8**. On January 9, 2019, the panel issued its Final Award, awarding $4,987,092.29 in damages, attorneys' fees, costs, AAA administrative fees, and arbitrators' fees to 4Front ("Award"), ordering CWNevada to pay 4Front the Award.[5] *Id.*

---

[5] Another entity, NuVeda LLC, was also a party to the arbitration, largely aligned with Debtor. NuVeda recently satisfied its separate ~$3.7 million judgment in 4Front's favor.

**B.**     **Nevada Action.**

On January 22, 2019, 4Front moved to confirm the award in the Nevada Action over Debtor's objections. Braddock Decl. ¶ 5. On March 14, 2019, the Nevada court confirmed the Award, entering final judgment in favor of 4Front and against Debtor in the amount of $4,987,092.29. Mar. 14, 2019 Order, attached as **Exhibit 9.** To prevent the misappropriation and/or dissipation of Debtor's assets pending entry of Judgment, on February 5, 2019, 4Front sought, and the Nevada court entered, a Temporary Restraining Order prohibiting Debtor from "selling, transferring, or otherwise disposing of any assets" in Debtor's possession, custody, and/or control. Feb. 5, 2019 Order, attached as **Exhibit 10**. Subsequently, 4Front filed its Application for Appointment of a Receiver ("Application"), and on February 28, 2019, the court held a hearing on 4Front's Application. Braddock Decl. ¶ 6. During the initial hearing on the Application, Debtor requested an additional three weeks to file a supplemental response, and the hearing on 4Front's Application was moved to April 4, 2019. Braddock Decl. ¶ 7. In addition to moving the hearing, on March 14, 2019, the court granted 4Front's Motion for Preliminary Injunction, thereby converting the Temporary Restraining Order to a preliminary injunction "to preserve the status quo, effective until the Court orders otherwise." March 14, 2019 Injunction, attached as **Exhibit 11**.

On March 26, 2019, certain noteholders filed a motion to intervene. Braddock Decl. ¶ 8. At the April 2, 2019 hearing on this issue, Debtor indicated (for the first time) that it intended to file an emergency motion seeking even more time to respond to 4Front's Application. Braddock Decl. ¶ 9. Debtor filed its emergency motion within hours of the hearing, and the Court set a hearing on the emergency motion on April 4, 2019. Apr. 2, 2019 Emergency Motion on Order Shortening Time, attached as **Exhibit 12**. During the April 4th hearing, Debtor made many material representations to the Nevada court and the parties, including those discussed below.

For example, the court stated, "I would want to make sure that if I were to grant the continuation request, that nothing happens in the interim . . . to cause any prejudice." *See* Ex. 5 at 8:23-9:2. The court continued, "If I grant the Motion to Continue . . . I want to be as aggressive as I can in continuing the injunctive activity to be sure . . . that there's no exposure or potential

prejudice to the defense or the intervening parties as we go forward . . . I would want to have an aggressively tailored injunction to make sure that nothing bad could happen." *Id.* at 10:9-18, 11:12-14. In response to these concerns, Debtor's lawyer, Justice Maupin (Ret.), agreed "the injunction is a very important part of . . . the protection for this arbitration judgment." *Id.* at 24:9-11. And Justice Maupin (Ret.) represented to the Court:

> [W]e've got some language here that we would suggest that I think would protect everyone involved and that is to add language to the effect that CWNevada, LLC shall . . . take any and all steps necessary to **ensure that all tax payments due to the State of Nevada and municipalities shall be current as of the continued hearing**.

*Id.* at 24:14-21 (emphasis added). The court relied on that representation and responded "So, you can keep that all current." *Id.* at 24:24.

Acknowledging the "idea of failing to pay taxes, jeopardizing the license, was part and parcel of the Opposition to the continuation," the Court reiterated, "Mr. Maupin stands up and says, we'll agree to keep all the tax issues current, that seems to me *if I order it, they'll do it*. That dispenses with any prejudicial concern having to do with the tax issue." *Id.* at 26:23-27:4 (emphasis added). And the Court recognized that "[CWNevada] would proceed at their own risk if they were to do something untoward." *Id.* at 31:7-8.

Accordingly, the court ordered Debtor to verify that Debtor was current on its cannabis related tax obligations in order to prevent the substantial risk of revocation of Debtor's valuable cannabis licenses. "[T]he injunction will require to plaintiffs to be current and verify to the defense and the intervenors that they're current on the tax obligations." *Id.* at 56:20-23. Again, the court ordered compliance by 5:00 p.m. on April 9, 2019. *Id.* at 57:5-16.

During the hearing, and although the court did not impose the same type of deadline as for the tax issue, the court also ordered Debtor to make sure that Debtor's employees were paid all wages. Ex. 5 at 57:5-22. Since the April 4, 2019 hearing, three of Debtor's employees have filed a class action lawsuit against Debtor for non-payment of wages. A copy of their complaint is attached as **Exhibit 13**.

Snell & Wilmer

L.L.P.

LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
(702)784-5200

In summary, during the hearing, the court: (1) granted Debtor's motion for additional time; (2) set a May 6, 2019 evidentiary hearing on 4Front's Application; and (3) ordered Debtor, among other things, to get current on all cannabis related tax obligations and provide verification to 4Front and all intervening parties no later than 5:00 p.m. on April 9, 2019, so that Debtor's valuable cannabis licenses would not be at risk of revocation. *See* Ex. 5 at 57:5-58:10.

The April 9, 2019 5:00 p.m. deadline passed without Debtor submitting the required proof that it had paid it cannabis related taxes. Braddock Decl. ¶ 10. Two hours after the court's April 9, 2019 deadline passed, 4Front's counsel e-mailed Debtor's counsel and requested Debtor's verification that it paid its cannabis tax obligations; Debtor did not respond. Braddock Decl. ¶ 11. On the afternoon of April 10, 4Front's counsel again requested the verification from Debtor. And, again, Debtor failed to respond. Braddock Decl. ¶ 12. Later that afternoon, Intervenor Tim Smits Van Oyen received an e-mail from the Marijuana Enforcement Division of the Nevada Department of Taxation. *See* April 10, 2019 Email from R. Branner with attachments, attached as **Exhibit 14**. According to the Marijuana Enforcement Division's e-mail, as of the afternoon of April 10, 2019, Debtor continues to owe the State of Nevada $388,890.45 in taxes through February 2019. *Id.* The Marijuana Enforcement Division also provided copies of recent billing statements and a copy of a Notice of Dishonored Payment, demonstrating that Debtor's tax payment postmarked on March 15, 2019 was returned by the bank "due to Payment Stopped." *Id.*

Equally concerning is the fact that on or about April 18, 2019, 4Front learned that the the Debtor has allowed its insurance to lapse, including its insurance for general liability, property, worker's compensation, product liability and directors and officers. *See* April 18, 2019 Email from Greg Pike to Tim Smits Van Oyen, attached as **Exhibit 24.**

Accordingly, 4Front filed on April 12, 2019, an *Ex Parte* Application for Order to Show Cause (attached as **Exhibit 15**) regarding CWNevada's violation of the court's order. The Court entered the Order to Show Cause and set a hearing for April 17, 2019. Ex. 15.

During the weekend before the hearing, Debtor's CEO Padgett sent several creditors an email (attached as **Exhibit 16**) with the subject line, "Wrong Turn, Boys":

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
(702)784-5200

1    Since we are coming to the end of this clown convention, I'll tell
     you, smartest thing Jannotta[6] did was not joining in on this one.
2

3    I doubt any of you are fit to hold licenses.

4    Heat's about to turn up boys.

5    BCP [Brian C. Padgett]

6    This "heat" undoubtedly referred to Debtor's last-ditch effort to delay a receiver by filing the

7    Petition in this Court, which it did close to 11:00 p.m. on the eve of the April 17, 2019 hearing.

8    *See* ECF No. 1.  Neither Debtor's CEO Padgett nor Debtor's new lawyer Justice Maupin (Ret.)

9    was at the April 17, 2019 hearing, during which the court considered possible contempt sanctions.

10   Braddock Decl. ¶ 13.  The court also set a May 6, 2019, hearing for Debtor to show cause as to

11   why it should not be held in contempt for violating the court's order.  Braddock Decl. ¶ 14.

12   **C.    <u>Debtor Is Mismanaged</u>**

13       As discussed above, the past two months have included numerous court hearings in the

14   Nevada Action wherein Debtor has tried, unsuccessfully, to show the Nevada court that Debtor is

15   not mismanaged and has more than enough assets to satisfy its debts.[7]

16       As an example, Debtor had its respected lawyer, Justice Maupin (Ret.), tell the Nevada

17   court that Debtor would come current on its taxes, even waving a sizeable paper check at the

18   hearing to convince the Nevada court that Debtor's affairs were under control.  *See* Ex. 5 at

19   24:14-21, 41:4-42:1.  It did so to bolster Debtor's argument that the month-long delay in

20   appointing a receiver would not prejudice the creditors; the Court granted that delay based in part

21   on Justice Maupin's representation.  *See id.* at 26:23-27:4. Yet, the Debtor ordered a stop payment

22   and continues to disobey the Nevada court order to be current on taxes.  **Exhibit 14** at 065;

23   **Exhibit 6**.  Despite the huge potential (under competent management) for profitability by a state-

24   legal cannabis business with three dispensaries around Las Vegas and numerous other state-

25   licensed marijuana facilities, Debtor's affairs are out of control.

26

27   _____
     [6] Mr. Jannotta appears to be another creditor, who may or may not have already been satisfied.
28   [7] Under the well-managed care of a qualified Nevada court-appointed receiver, 4Front also currently
     believes it would be possible for Debtor to satisfy its debts within a reasonably short time.

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
(702)784-5200

Debtor's actions in a separate lawsuit brought by The CIMA Group LLC also show Debtor's mismanagement. On March 15, 2019, Judge Allf (Clark County District Court, Department 27) entered an Order to Show Cause Why Contempt and Discovery Sanctions Should Not Be Imposed upon Debtor. *See* March 15, 2019 Order (Judge Allf), attached as **Exhibit 17**. The Order to Show Cause ordered Debtor, Brian Padgett, and Amy Sugden[8] to appear in Department 27 to "show cause why they and CWNevada should not be held in contempt and why the contempt and/or discovery related sanctions requested . . . should not be imposed for disobedience of orders issued by this Court and for failing to respond to discovery requests and produce documents and other tangible things as required by the Court's orders." *Id.*

Debtor's failure to provide evidence in the Nevada Action in support of its alleged ability to satisfy a judgment also shows mismanagement. Debtor claims, "in this matter, plummeting revenues do not exist" (CWNevada Supplemental Opp'n, attached as **Exhibit 19**, at 7:8), but Debtor recently closed one of the three dispensaries it controls—the dispensary on 3rd Street in Las Vegas. *See* Jan. 31, 2019 Letter to CWNevada, attached as **Exhibit 20** ("Most egregious, CWNevada has unilaterally decided to close the dispensary located at 1320 South 3rd Street, Las Vegas, Nevada 89104."). It is axiomatic that closing one of the three dispensaries creates plummeting revenues. If Debtor had evidence to show revenues somehow were not plummeting and that it was properly managing its business, it could have done so. But it has not.

**D.    Debtor Is Desperate to Frustrate 4Front's Creditor Rights**

Debtor, led by Padgett, has sought at every turn to avoid paying 4Front. Debtor refused to pay under its contract with 4Front despite receiving valuable services in obtaining numerous marijuana licenses in a highly-competitive environment. *See* Krane Decl. ¶¶ 6, 13-14. Debtor refused to pay when 4Front attempted to negotiate a resolution, and even secretly sued 4Front (without merit) several days before a settlement meeting between principals. *See* Braddock Decl. ¶ 3. Debtor refused to participate in the arbitration and had to be compelled by the Nevada court. *Id.* Debtor refused to follow the arbitration panel's discovery orders and was sanctioned in the

---

[8] Ms. Sugden is a Nevada lawyer who works (or worked) for Mr. Padgett's law office. On April 19, 2019, Ms. Sugden filed her own lawsuit against Mr. Padgett and his law office, seeking to recover $225,100 from an alleged loan to Mr. Padgett. Sugden Complaint, attached as **Exhibit 18**.

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
(702) 784-5200

arbitration for its disobedience. Mar. 15, 2018, AAA Order, attached as **Exhibit 23**. Debtor lost on *all* of its claims and defenses at the arbitration hearing. Ex. 8. Debtor refused to pay the arbitration award. Krane Decl. ¶ 24. Debtor opposed confirmation of the arbitration award, arguing unsuccessfully that the Nevada *state court* could not confirm the *Nevada-law-based* award because of federal illegality under the Controlled Substances Act.[9] Braddock Decl. ¶ 15. Debtor refused to pay 4Front after the award was confirmed and final judgment entered. Braddock Decl. ¶ 16. Debtor opposed receivership and demanded continuance based on the good (but unfortunately mis-used) credit of its lawyer Justice Maupin (Ret.). *See, generally*, Exs. 5, 19. Through its lawyers and CPA, Debtor represented to the Nevada state court that there were more than enough assets to satisfy 4Front's judgment, so a month-long delay of the receivership hearing would cause no prejudice. *See, generally*, Exs. 4, 5, 21. After losing every conceivable battle in this multi-year war that Padgett calls a "clown convention," and on the brink of receivership, Debtor filed this bankruptcy Petition in federal bankruptcy court—to achieve a stay and further prejudice its creditors' rights—fully knowing that this Court cannot grant relief to a state-licensed cannabis business that operates in violation of federal law. Nonetheless, he taunts: "Wrong Turn, Boys, … Heat's about to turn up boys." Ex. 16.

Debtor's transparent delay strategy is further manifest by Debtor's complete failure to file most of the required documents in support of the slipshod Petition. The record shows that Debtor's only purpose is to delay the Nevada Action so that he can hide assets and not to receive federal law protection, an impossibility under the circumstances.

### III.  ARGUMENT

**A.  This Court Cannot Grant Relief to Debtor Under Federal Bankruptcy Law.**

At least three statutory grounds exist, in addition to the unclean hands doctrine, for dismissing Debtor's Petition. But before reaching those specific grounds, this section explains generally why the federal bankruptcy protection Debtor seeks is futile.

---

[9] While unbelievable in this forum, Debtor actually argued that its business was violative of the CSA to try and avoid confirmation of the arbitration award. It cannot now argue otherwise.

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
(702) 784-5200

1     The Supreme Court has held that "[t]here is no constitutional right to obtain a discharge of

2  one's debts in bankruptcy." *United States v. Kras*, 409 U.S. 434, 446 (1973).  A bankruptcy

3  discharge "is a privilege." *In re Morgan*, No. ADV. 04-04017, 2006 WL 6810970, at *3 (B.A.P.

4  9th Cir. Sept. 13, 2006); *accord In re Arenas*, 535 B.R. 845 (10th Cir. BAP 2015) ("Bankruptcy

5  relief is merely a privilege."); *In re Aguirre*, No. 12-14281-B-7, 2012 WL 8255587, at *2 (Bankr.

6  E.D. Cal. Oct. 9, 2012) ("A bankruptcy discharge is a privilege and may only be granted to the

7  honest debtor.")

8     While the Ninth Circuit BAP has yet to squarely address the specific marijuana issue

9  raised here, the Tenth Circuit BAP (cited by bankruptcy courts in the Ninth Circuit) has held that

10  state-licensed cannabis operators cannot obtain bankruptcy relief under federal law:

11          Possessing, growing, and dispensing marijuana and assisting others to
           do that are federal offenses. But like several other states, Colorado has
12          legalized these acts and heavily regulates them, triggering a flourishing
           marijuana industry there. Can a debtor in the marijuana business
13          obtain relief in the federal bankruptcy court? No.

14  *In re Arenas*, 535 B.R. 845, 847 (10th Cir. BAP 2015).  Citing the U.S. Supreme Court's decision

15  in *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 375 (2007), the Tenth Circuit BAP

16  noted that the debtor's involvement in federally unlawful conduct "betrays a lack of good faith

17  that would bar confirmation under 11 U.S.C. § 1325(a)(3)." *Arenas*, 535 B.R. at 847.  While

18  Debtor and Padgett have demonstrated substantial bad faith through their conduct during the past

19  two years, the mere application for federal bankruptcy relief by Debtor, *as a marijuana business*,

20  shows the requisite "lack of good faith" required to justify dismissal.  *In re Arenas*, 535 B.R. at

21  849-50 ("while the debtors have not engaged in intrinsically evil conduct, the debtors cannot

22  obtain bankruptcy relief because their marijuana business activities are federal crimes").

23     The Tenth Circuit BAP affirmed the bankruptcy court's dismissal because "it would be

24  impossible for the . . . Trustee to administer the [debtor's] estate because selling and distributing

25  the proceeds of the marijuana assets would constitute federal offenses."[10]  *Id.* at 853.  The

27  ───────────────

28  [10] While a *federally* appointed trustee would violate *federal* law in administering a reorganization plan
here, a Nevada-appointed receiver would not violate Nevada law in operating Debtor's business, because
the conduct at issue, which takes place in Nevada, is legal under Nevada law.

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
(702)784-5200

1    appellate court held that the "impossibility of lawfully administering the estate constituted cause

2    for dismissal under § 707(a)." *Id.*

3        In sum, a debtor whose sole business is marijuana sales cannot obtain federal bankruptcy

4    relief.  *Id.; see also In re Rent-Rite Super Kegs W. Ltd.*, 484 B.R. 799, 805 (D. Colo. 2012)

5    (dismissing Chapter 11 petition where 25% of debtor's revenue came from leasing to marijuana

6    business, holding that "a federal court cannot be asked to enforce the protections of the

7    Bankruptcy Code in aid of a Debtor whose activities constitute a continuing federal crime"); *In re*

8    *Way To Grow, Inc.*, 597 B.R. 111, 120 (D. Colo. 2018) ("a bankruptcy case cannot proceed where

9    the court, the trustee or the debtor-in-possession will necessarily be required to possess and

10   administer assets which are . . . illegal under the CSA"); In *In re Jerry L. Johnson*, 532 B.R. 53

11   (Bankr. W.D. Mich. 2015) (operating business even with mixed income sources—some unlawful

12   and some "untainted," would require the court, trustee, and debtor to violate federal law); *In re*

13   *McGinnis*, 453 B.R. 770 (Bankr. D. Or. 2011) (chapter 13 plan was unconfirmable because it

14   relied on a future change to Oregon medical marijuana law and it violated federal law); *In re*

15   *Medpoint Mgt., LLC.*, 528 B.R. 178 (Bankr. D. Ariz. 2015), *vacated in part*, 2016 WL 3251581

16   (9th Cir. BAP 2016) (petitioning creditors who filed an involuntary petition against a company

17   with whom they were involved in the (legal under state law) medical marijuana business, acted

18   with unclean hands because they were engaged in activity illegal under federal law).

19       The two most pertinent Ninth Circuit BAP decisions on this topic were designated "Not

20   for Publication."  The first, *In re Medpoint Management*, was limited to whether there was a bad

21   faith showing by an involuntary debtor who successfully dismissed the creditors' involuntary

22   petition—based on a similar Controlled Substances Act argument as raised in the instant

23   motion—sufficient to justify an award of attorney fees, costs, and damages.    No.

24   BAPAZ151130KUJAJU, 2016 WL 3251581 (B.A.P. 9th Cir. June 3, 2016) (vacating fees, costs,

25   and damages order and remanding for further record development on the bad faith question).  The

26   instant motion is not about awarding fees, costs, or damages for improper bankruptcy filings.

27       The second Ninth Circuit BAP decision, *In re Olson*, also "Not for Publication," vacated

28   dismissal of a 92-year old blind debtor's petition for chapter 13 relief to stop foreclosure of her

Snell & Wilmer

L.L.P.

LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
(702)784-5200

1    commercial real property, because some rent had been paid that was derived from operation of a

2    marijuana business.  No. 3:17-BK-50081-BTB, 2018 WL 989263, at *5 (B.A.P. 9th Cir. Feb. 5,

3    2018).  The BAP noted the bankruptcy court's failure to cite any statutory authority or make any

4    findings regarding bad faith.  *Id.*  In view of the blind nonagenarian whose finances were being

5    handled by her son, it was not even clear from the record whether the scienter element of a

6    Controlled Substances Act violation was present.  *Id.* at *6.  While the BAP indicated there was

7    authority to support the dismissal, it vacated and remanded because "without specific findings

8    and conclusions, we cannot determine whether or how the court found those cases applicable to

9    the facts of this case."  *Id.*  Judge Tighe's concurring opinion further noted "the importance of

10   evaluating whether the Debtor is actually violating the Controlled Substances Act and (2) the

11   need for the bankruptcy court to explain its conclusion that dismissal was mandatory under these

12   circumstances."  *Id.*  In discussing situations where dismissal is clearly appropriate, Judge Tighe

13   noted "these were cases where the debtor sought to continue to distribute marijuana post-petition

14   or where a trustee would be asked to accept proceeds of a drug-related business, situations where

15   federal law would clearly be violated."  *Id.* at *7.  Clearly, that is the situation here because

16   selling marijuana is Debtor's only business.  See Exs. 1, 3; Krane Decl. ¶¶ 9-10; Imbimbo Decl.

17   ¶¶ 6-7.  And unlike Olson, Debtor is not a blind elderly person who has no idea that federal laws

18   are being broken.  Neither is Mr. Padgett.  He is a Nevada lawyer who knows precisely what the

19   federal laws prohibit.

20        Accordingly, the law this Court must follow is clear:  the Court must dismiss the Petition.

21   **B.    Dismissal Under 11 U.S.C. § 305(a) Is Warranted Because Interests of Creditors and**
22   **Debtor Are Better Served by Dismissal.**

23        Dismissal is proper under Section 305(a) if "the interests of creditors and the debtor would

24   be better served by such dismissal . . . ."  11 U.S.C. § 305(a)(1).[11]  When considering whether to

25   abstain by dismissal, "a bankruptcy court is not bound by a prescriptive template; it may consider

26   any factors it deems relevant to the determination of whether it is in the best interests of the

---

[11] Section 305(a)(1) applies in voluntary cases.  *See, e.g., In re IT, LLC*, No. A15-00107-HAR, 2015 WL
5042147, at *5 (Bankr. D. Alaska May 4, 2015), *as corrected* (May 7, 2015); *In re Gabriel Techs. Corp.*,
No. 13-30341, 2013 WL 5550391, at *4 (Bankr. N.D. Cal. Oct. 7, 2013) ("[S]uspension or dismissal is
clearly available on voluntary petitions.")

1    parties to the suit to seek dismissal." *In re Spade*, 269 B.R. 225, 228 (D. Colo. 2001); *see In re*

2    *Eastman*, 188 B.R. 621, 624–625 (9th Cir. BAP 1995) (under section 305(a), "the test is whether

3    both the debtor and the creditors would be 'better served' by a dismissal").

4        Courts consider many factors, among them "whether another forum is available to protect

5    the interests of both parties or there is already a pending proceeding in state court," debtor's

6    "purpose for which bankruptcy jurisdiction has been sought," and "the economy and efficiency of

7    administration." *In re Morabito*, No. BAP NV-14-1593-FBD, 2016 WL 3267406, at *5 (B.A.P.

8    9th Cir. June 6, 2016) (citing seven-factors listed in *In re Monitor Single Lift I, Ltd.*, 381 B.R.

9    455, 464–65 (Bankr. S.D.N.Y. 2008)).  These three factors, at a minimum, demonstrate that the

10    interests of the creditors and Debtor are better served by abstention by dismissal in this case.

11    **C.    Availability of Another Forum Adequate to Resolve the Dispute.**

12        In *In re Spade*, the court concluded that "lack of procedural or substantive benefits in the

13    bankruptcy court, the fact that the parties can fairly resolve this dispute in the state court, and the

14    fact that the proceedings in the bankruptcy court may cause undue delay to creditors suggests that

15    the interests of the creditors and the Debtor would be better served by dismissal of the case in

16    favor of the state court proceedings." 258 B.R. 221, 235 (D. Colo. 2001).  Here, Debtor's core

17    business—operating a Nevada marijuana business—necessitates that another forum, the Nevada

18    district court in Clark County, resolve the Debtor's debt and management issues.  4Front and

19    other creditors are several months into that process, at a substantial cost. *See also Morabito*, 2016

20    WL 3267406, at *5 (also considering "whether a non-federal insolvency has proceeded so far in

21    those proceedings that it would be costly and time consuming to start afresh with the federal

22    bankruptcy process").

23        Indeed, 4Front, joined by other creditors, has sought appointment of a receiver in the

24    Nevada Action because 4Front's interests (and that of other creditors) were at risk of being

25    materially injured or impaired.  As demonstrated through the Nevada Action, the Nevada court is

26    well-equipped to handle a receivership of a state-licensed marijuana-related business and appoint

27    an equitable receiver. *See, e.g. Yates v. Hartman*, 2018 COA 31, 2018 WL 1247615, *4 (Col. Ct.

28    App. March 8, 2018), *cert. denied*, No. 18SC283, 2018 WL 6047904 (Colo. Nov. 19, 2018)

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
(702)784-5200

1    (Colorado court may appoint receiver over marijuana business so long as receiver complied with

2    Colorado's marijuana licensing laws).

3        Creditors can expect comparable treatment in a state court receivership that they would

4    have received under bankruptcy law, where a receivership estate is created, a neutral officer of the

5    court—the receiver—exercises control over the estate and administers claims against the

6    receivership estate.  Further, the Debtor's matters should be relegated to Nevada state court

7    because federal bankruptcy courts are not empowered to preside over marijuana-related

8    businesses whose activities place assets – and the bankruptcy trustee – at risk of federal seizure,

9    forfeiture, and prosecution.  *See, e.g., In re Rent-Rite Super Kegs W. Ltd.* 484 B.R. 799, 806 (D.

10   Colo. 2012) ("Yet, the Court cannot use the adjudicative authority granted to it by Congress to

11   force [creditor] to bear even a highly improbably risk of total loss of its collateral in support of

12   the Debtor's ongoing violation of federal criminal law.").  Accordingly, the availability of another

13   forum to handle this matter supports Section 305(a) dismissal.

14   **D.    Debtor's Motivation in Filing the Petition Was to Frustrate Creditors' Rights.**

15       Debtor, and its principal and CEO Mr. Padgett, saw defeat at every turn in arbitration and

16   in the Nevada Action.  It knew a receiver was about to be appointed, and after that Debtor and

17   Mr. Padgett would have a much more difficult time misappropriating and mismanaging (for Mr.

18   Padgett's benefit and to the detriment of 4Front and other creditors) the highly liquid cash and

19   other assets in Debtor's possession.  Debtor and Mr. Padgett were on the eve of receiving severe

20   sanctions for their contempt in the Nevada Action.  The only way to delay further was to, as

21   Padgett put it, turn up the "heat" by filing a bankruptcy petition and getting an automatic stay

22   regardless of the well-known futility of federal bankruptcy proceedings in a case like this.

23       This motivation, which had nothing to do with getting creditors paid, supports abstention

24   by dismissal as serving the best interests of creditors and the Debtor.  *See, e.g., In re Drury*, No.

25   2:15-BK-17125, 2016 WL 4437555, at *7 (B.A.P. 9th Cir. Aug. 23, 2016) (considering

26   "motivation for the debtor's bankruptcy case filing, including any intent to impede state court

27   litigation" as a factor favoring dismissal); *see also In re eFusion Servs., LLC*, No. 13-30740

28

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
(702) 784-5200

1  MER, 2014 WL 5293415 (Bankr. D. Colo. Oct. 16, 2014) (debtor's motivation—reducing value

2  to creditors—for seeking bankruptcy jurisdiction supported dismissal).

3  **E.      Economy and Efficiency of Administration Supports Abstention by Dismissal.**

4         In cases like this one, the state court is the most efficient and economical forum to

5  administer the issues raised in the dispute. *See, e.g., In re Space*, 258 B.R. 221, 236 (D. Colo.

6  2001). Neither the creditors nor the Debtors can possibly fare better with the assistance of a

7  federal bankruptcy court that is powerless to appoint a trustee over an enterprise whose core

8  business is illegal under federal law, or to protect and administer the Debtor's only assets that

9  could produce revenue sufficient to satisfy the debts at issue. For example, Section 6.1 of the

10  Region 17 United States Trustee Guidelines states that management and operation of the Debtor

11  shall be performed "without risk to the public and in compliance with federal, state, and local

12  law." While a trustee could avoid violating state and local law, there is no way to "manage and

13  operate" Debtor "in compliance with federal" law.

14         Administration of Debtor's estate in bankruptcy is futile because revenues enabling any

15  reorganization plan would necessarily be generated from activity (growing, distributing, and

16  selling marijuana) that is federally illegal. *See In re Rent-Rite Super Kegs West Ltd.*, 484 B.R.

17  799, 809 (D. Colo. 2012 ("[Section] 1129(a)(3) forecloses any possibility of this Debtor obtaining

18  confirmation of a plan that relies on any part on income derived from a criminal activity."). Here,

19  the Debtor intends to fund reorganization through the sale of cannabis, as confirmed by Debtor's

20  CPA in the affidavit filed in the Nevada Action. Imbimbo Decl. ¶¶ 6-7.[12] This is not a surprise

21  because selling marijuana is Debtor's sole business. Ex. 1; Padgett Decl. ¶¶ 8, 13. Thus, there is

22  no possibility to obtain confirmation of any reorganization plan under Section 1129(a)(3).

23         Moreover, given Debtor's mismanagement, allowing Debtor and Padgett to *avoid* (by

24  maintaining this bankruptcy action) the appointment of an experienced, neutral receiver to run the

25  business and make the creditors whole pursuant to Nevada law will *not* serve the economic and

26  efficient administration of the estate. Under Padgett's leadership, Debtor is seriously

27  _____

[12] 4Front necessarily relies on evidence from the Nevada Action because Debtor failed to comply with the rules requiring it to submit numerous materials, including a Summary of Assets and Liabilities, Schedule

28  A/B: Property; Schedule D: Creditors Who Have Claims Secured by Property; Statement of Financial Affairs, and others, in connection with the Petition. *See* ECF No. 7 (Clerk's Notice of Deficiency).

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
(702)784-5200

mismanaged.  In the Nevada Action, Judge Bare has already signaled that he is likely to sanction CWNevada because it has ignored his Order.  *See* Ex. 22 at 20:14-16.

4Front is an expert in this industry, and all indicators are that Debtor should be hugely profitable.  Because of Mr. Padgett's poor decision-making, it is not.  A state-appointed receiver will efficiently resolve the issues, turn Debtor around, and resolve the creditors' claims in an expeditious manner.  On the other hand, proceeding in this Court, with the attendant stay on the Nevada court's efforts, will indefinitely stall and potentially destroy any resolution as the Debtor continues to flounder and squander resources under Padgett's control.  Accordingly, the interests of the creditors and the Debtor are better served by abstention by immediate dismissal under 11 U.S.C. § 305(a).

**F.      Dismissal Under 11 U.S.C. § 1112(b) Is Warranted Because Debtor's Bad Faith Constitutes Cause for Dismissal, Which Is Also in the Best Interests of Creditors and the Estate.**

11 U.S.C. § 1112 lays out a non-exclusive list of reasons a court should consider dismissal of a chapter 11 case, including "for cause."  "For cause" includes the filing of a bankruptcy case in bad faith.  *In re Marsch*, 36 F.3d 825, 828 (9th Cir. 1994) ("[C]ourts have overwhelmingly held that a lack of good faith in filing a Chapter 11 petition establishes cause for dismissal."). The Ninth Circuit BAP has held that "bad faith exists if there is no realistic possibility of reorganization and the debtor seeks merely to delay or frustrate efforts of secured creditors."  *In re Boulders on the River, Inc.*, 164 B.R. 99, 103 (B.A.P. 9th Cir. 1994).  Such is the case here. Indeed, "a bankruptcy plan that proposes to be funded through income generated by the sale of marijuana products cannot be confirmed unless the business generating the income is legal under both state law and federal law."  *Arm Ventures,* 564 B.R. at 84.

Even if the Debtor was otherwise of "pure mind and heart" when this case was filed, the very fact that the only possible plan would be based on income derived from the sale of marijuana can be deemed "bad faith".  *Arenas,* 535 B.R. at 852–53 (affirming the bankruptcy court's finding that, notwithstanding that the debtors appeared "to be sincere and credible" and "their motives in seeking bankruptcy relief were not improper").  As the Tenth Circuit BAP held, in finding bad faith, "It is objectively unreasonable for them to seek Chapter 13 relief whether their intentions

-17-

are kindly or not." *Id.*; *accord In re Jerry L. Johnson*, 532 B.R. at 53; *see also In re Natural Land Corp.*, 825 F.2d at 296 (debtor cannot rid itself of a bad faith filing); *Albany Partners*, 749 F.2d at 670 (same).

**G.      The Petition Should be Dismissed Because of Debtor's Unclean Hands.**

"The 'unclean hands' defense applies to conduct immediately related to the cause in controversy." *In re Everett*, 364 B.R. 711, 723 (Bankr. D. Ariz. 2007) (citation omitted). "[B]ecause of the clean hands doctrine a federal court should not, in an ordinary case, lend its judicial power to a plaintiff who seeks to invoke that power for the purpose of consummating a transaction in clear violation of law." *See Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 387 (1944). "Under the 'clean hands' doctrine, one who does not come into equity with clean hands, and keep them clean, must be denied all relief, whatever may have been the merits of his claim." *Hall v. Wright*, 240 F.2d 787, 794–95 (9th Cir. 1957).

Here, Debtor has unclean hands because, as it knows, there is no way to proceed with this action without promoting consummation of transactions that clearly violate federal law. *See Johnson*, 321 U.S. at 387.

In *In re Medpoint Management*, the bankruptcy court dismissed the *creditors' involuntary petition* for relief, under the unclean hands doctrine, because the petitioning creditors knew they had a consulting relationship with a medical marijuana company (the debtor). *In re Medpoint Mgt., LLC.*, 528 B.R. 178 (Bankr. D. Ariz. 2015), *vacated in part on other grounds*, 2016 WL 3251581 (9th Cir. BAP 2016). If the *Medpoint Management* creditor-petitioners had unclean hands justifying dismissal, then the *Debtor-petitioner in this case* has hands that are all the more unclean because Debtor-petitioner is not merely a consultant, Debtor-petitioner *IS* the entity actually cultivating, manufacturing, distributing, and selling marijuana.  The case must be dismissed because of Debtor-petitioner's own unclean hands.

**H.      In the Absence of Dismissal, the Stay Should Be Lifted so the Nevada Court Can Proceed with Protecting Creditors' and Debtor's Interests.**

The authorities cited above all point to dismissal in this case because there is no plan the Debtor could propose that does not rely on federally illegal conduct by a bankruptcy trustee.  As a

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
(702)784-5200

less-efficient alternative, one bankruptcy court denied dismissal but "granted relief from stay to continue with" the collateral state action. *Arm Ventures, LLC*, 564 B.R. 77, 87 (S.D. Fla. 2017). There, however, the Court imagined a possibility that the debtor could "file a plan that does not depend on the sale of marijuana as an income source," because the debtor had real property with tenants who were not selling marijuana. *Id.* at 86. That is different than here because it is not feasible that Debtor could generate any revenue that does not depend on marijuana, because that is Debtor's only revenue source. *See* Imbimbo Decl. ¶¶ 6-7 (counting the enormous value of Debtor's marijuana inventory and estimating there is enough cash generation potential to satisfy its debt to 4Front). Accordingly, while this case should be dismissed for the reasons set forth herein, at a minimum the facts and law justify lifting the stay so that 4Front and the other creditors can proceed with their months-long efforts to appoint a receiver and receive other appropriate relief under Nevada law in the Nevada state court, which is much better suited to resolve this dispute.

Specifically, if the Court does not dismiss the Petition, 4Front requests that the Court lift the stay so: (1) the Nevada state court may appoint a receiver, and (2) the Nevada state court may proceed in ordering sanctions against Debtor. Given the urgency of the situation and the rapid dissipation of Debtor's assets, 4Front requests that the Court waive the 14-day stay of enforcement of the order terminating the automatic stay that would otherwise exist under F.R.B.P 4001(a)(3).

## IV.  CONCLUSION

It is fully within the providence of the Nevada court to sort out issues under Nevada state law, including rendering judicial decisions and orders affecting Nevada's highly-regulated and important state-legal marijuana policy, which policy was reflected by an affirmative ballot initiative process and subsequent statutes and regulations enacted through duly authorized legislative bodies on behalf of the people of Nevada.  It is *not* within the province of this honorable federal Court, purely "a creature of federal law," to lift its equitable hand in aid of the Debtor whose core business and only revenue source violates the federal Controlled Substances Act.  The Petition should be dismissed.

DATED this 23rd day of April 2019.

Snell & Wilmer L.L.P.

By: _____
Bob L. Olson (NV Bar No. 3783)
Justin L. Carley (NV Bar No. 9994)
Charles E. Gianelloni (NV Bar No. 12747)
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169
Telephone: (702) 784-5200
Facsimile:  (702) 784-5252

*Attorneys for 4Front Advisors LLC*